UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS DIDONNA, | : | 3:24-CV-01080 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| OFFICER WALTER KOZA, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

Plaintiff Louis DiDonna claims that he was arrested and charged for a crime that never occurred.  After screening DiDonna's complaint in accordance with 28 U.S.C. § 1915A, we concluded that the Eleventh Amendment bars some of DiDonna's claims and that the complaint otherwise fails to state a claim upon which relief can be granted.  We granted DiDonna an opportunity to amend his complaint, but he has not filed an amended complaint.  Thus, we recommend that the court dismiss the complaint and close this case.

## II. Background.

DiDonna began this action by filing a complaint. *Doc. 1.* He also filed an application to proceed *in forma pauperis*, which we granted. *Docs. 2, 4.*

In the caption of his complaint, DiDonna lists four defendants: (1) Officer Walter Koza; (2) Pike County, Pennsylvania; (3) "PSP Blooming Grove Barracks"; and (4) Lisa Staso. *Doc. 1* at 1. And in the section of the complaint that identifies the defendants, he lists the same four defendants except that although in the caption he lists "PSP Blooming Grove Barracks" as a defendant, in this section he lists "PSP Blooming Grove State Police" as a defendant. *Id.* Although he lists the above entities and individuals as defendants, in his statement of the claim, he mentions only one defendant: Lisa Staso. *Id.* at 2. The entire statement of DiDonna's claim reads:

> I was arrested and charged with a crime that never occur[r]ed.
> On Approx 6/18/2016 Lisa Staso had went into the Blooming
> Grove PSP station with her husband Rick Kuiken. At this point
> Lisa was alread[y] Charged with filing false police reports. It
> was obvious[] Lisa was recon[c]iling with her husband during
> this time. When she walked into the Blooming Grove Barracks
> that day she started to sign the documents as Lisa Staso. By the
> time she left she was signing as Lisa Staso Kuiken for the first
> time in two years.

*Id.* As relief, DiDonna asserts that he would like those responsible for violating his rights to be fired or retrained. *Id.* He also seeks monetary damages. *Id.* He adds, however, that "no amount of money . . . could justify the time that was taken

from" him and his family. *Id.*  Further, he asserts that his "wrongful incarceration led to [his] daughter's adoption because [he] did not have [an] opportunity to prevent her from being [adopted]." *Id.*

By an Order dated July 24, 2024, we screened that complaint and concluded that the Eleventh Amendment bars DiDonna's claims against the Pennsylvania State Police and the Pennsylvania State Police Blooming Grove Barracks, and the complaint otherwise fails to state a claim upon which relief can be granted. *See doc. 5.*  We granted DiDonna leave to file an amended complaint within 28 days. *Id.* at 24.  Thus, any amended complaint was due on or before August 21, 2024. DiDonna has not, however, filed an amended complaint.

### III. *In Forma Pauperis* **Complaints—Standard of Review.**

Under 28 U.S.C. § 1915(e)(2), the court shall dismiss a complaint brought *in forma pauperis* if it determines that certain specified conditions are met.  More specifically, the court shall dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

4

The court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "take[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

In sum, "[w]e accept as true all factual matters [the plaintiff] alleges, but his complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "[a] claim that relies just on 'conclusory statements,' or on 'threadbare recitals of the elements of a cause of action' without supporting factual allegations, does not establish plausible grounds for relief." *Beasley*, 14 F.4th at 231 (quoting *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020)).

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). "[A] court must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). Thus, "[c]ourts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Id*. Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. Discussion.

DiDonna's complaint fails to state a claim upon which relief can be granted. It is unclear what claims DiDonna is asserting. But given that he asserts that he was arrested and charged with a crime that never occurred and he mentions wrongful incarceration, we liberally construe the complaint as attempting to raise Fourth Amendment claims. Such claims are brought under 42 U.S.C. § 1983.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### A. The Pennsylvania State Police and the Pennsylvania State Police Blooming Grove Barracks.

As mentioned above, in the caption of his complaint, DiDonna lists PSP Blooming Grove Barracks as a defendant, and in another section of his complaint, he lists PSP Blooming Grove State Police as a defendant. We liberally construe

7

the complaint as attempting to raise claims against both the Pennsylvania State Police and the Blooming Grove Barracks of the Pennsylvania State Police. But the Eleventh Amendment bars any such claims. And because the Eleventh Amendment bars those claims, this court lacks subject-matter jurisdiction over those claims.

The Eleventh Amendment implicates the court's subject-matter jurisdiction. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996) (noting that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction"); *but see Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction"). Thus, '[t]he court may consider Eleventh Amendment issues *sua sponte*, but is not required to do so." *Zulueta v. Chuckas*, No. 1:18-CV-356, 2018 WL 5814689, at *2 (M.D. Pa. Nov. 6, 2018).

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United

States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another State, or
> by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted '"to stand not so much for what it says, but for the presupposition . . . which it confirms."' *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).  That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

"Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). It "serves two fundamental imperatives: safeguarding the dignity of the states and ensuring their financial solvency." *Id*.  It serves those interests by barring suits against nonconsenting states. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73

(2000) (stating that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency.[1]  First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).  Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

Neither of those circumstances are present here.  The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Stat.

---

[1] Additionally, under *Ex parte Young*, claims against a state official in his or her official capacity for prospective declaratory or injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).  But *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993).

and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal court."). And 42 U.S.C. §1983, under which we assume DiDonna brings his claims, does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).

"The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania." *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022). As an arm of the state, the Pennsylvania State Police is entitled to Eleventh Amendment immunity. And the Pennsylvania State Police Blooming Grove Barracks "is not an entity separate and distinct from" the Pennsylvania State Police, rather it "is a branch of" of the Pennsylvania State Police. *Durham v. United States*, 9 F. Supp. 2d 503, 506 (M.D. Pa. 1998). In other words, a barracks of the Pennsylvania State Police and the Pennsylvania State Police "are one and the same[.]" *Id*. And because the Pennsylvania State Police is entitled to Eleventh Amendment immunity, it follows that so is the Pennsylvania State Police Blooming Grove Barracks. *See id*. (concluding that "because the Swiftwater Barracks and the State Police Department are one and the same, and because the

11

State Police Department is entitled to sovereign immunity, the Swiftwater barracks

is not a proper defendant and will be dismissed from this action"); *Martin v.*

*Rucinski*, No. CV 20-108, 2020 WL 7480932, at *2 (W.D. Pa. Oct. 8, 2020) (report

and recommendation recommending that the claims against the Uniontown

Barracks of the PSP be dismissed based on the Eleventh Amendment), *report and*

*recommendation adopted*, 2020 WL 7424977, at *1 (W.D. Pa. Dec. 18, 2020).


**B.  Lisa Staso.**

The requirement that a defendant act under color of state law is essential to

establish a claim under  42 U.S.C. § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 150 (1970).  DiDonna has not plausibly alleged that Staso was acting under

color of state law.  Thus, the complaint fails to state a 42 U.S.C. § 1983 claim upon

which relief can be granted against her.

"Action under color of state law 'requires that one liable under § 1983 have

exercised power possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp.*

*Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw,* 164

F.3d 141, 146 (3d Cir.1998)).  The Supreme Court has established several

approaches to the question of when a private person acts under color of state law.

*Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002).

12

The United States Court of Appeals for the Third Circuit has "outlined three broad
tests generated by Supreme Court jurisprudence to determine whether state action
exists: (1) 'whether the private entity has exercised powers that are traditionally the
exclusive prerogative of the state'; (2) 'whether the private party has acted with the
help of or in concert with state officials'; and (3) whether 'the [s]tate has so far
insinuated itself into a position of interdependence with the acting party that it
must be recognized as a joint participant in the challenged activity.'" *Kach v. Hose*,
589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d
1137, 1141 (3d Cir. 1995)).  "The inquiry is fact-specific," *Groman v. Twp. of
Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if,
though only if, there is such a 'close nexus between the State and the challenged
action' that seemingly private behavior may be fairly treated as that of the State
itself." *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.,* 531
U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345,
351 (1974)).

　　An otherwise private actor may act under color of state law when engaged in
a conspiracy with a state official. *Dennis v. Sparks*, 449 U.S. 24, 29 (1980).  "The
essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258
(3d Cir. 1989).  "To demonstrate the existence of a conspiracy under § 1983, 'a
plaintiff must show that two or more conspirators reached an agreement to deprive

him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483

F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.,*

5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists*

*Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)).

Because direct evidence of a conspiracy is rarely available, the existence of a

conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme*

*Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).  Still, to plead a

conspiracy, a plaintiff must allege "facts from which a conspiratorial agreement

can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d

159, 178 (3d Cir. 2010).  "To properly plead such an agreement, 'a bare assertion

of conspiracy will not suffice.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

      Here, DiDonna alleges that Staso went to the police barracks.  Although

DiDonna alleges that Staso changed the way she signed her name while at the

police barracks, he does not allege any facts about what Staso was signing or how,

if at all, it related to him.  In any event, "merely complaining to the police does not

convert a private party into a state actor for purposes of liability under § 1983."

*Bingaman v. Bingaman*, 4:07-CV-2352, 2009 WL 2424641 at *7 (M.D. Pa. Aug.

5, 2009); *see also Rodriguez v. Scranton Police Dep't*, No. 3:10CV2022, 2013 WL

74292, at *13 (M.D. Pa. Jan. 4, 2013) (concluding that "lying to the police while

simultaneously cooperating with an investigation is not enough to subject a private

individual to section 1983 liability"); *O'Neil v. Beck*, No. CIV.A.1:04-CV-2825, 2005 WL 2030319, at *2 (M.D. Pa. Aug. 4, 2005) (concluding that allegations that private defendants filed a "false" police report and wanted to see the plaintiff arrested were "simply insufficient to allow the . . . [d]efendants to be considered state actors for purposes of a claim under section 1983").

Because DiDonna has not alleged facts from which it can reasonably be inferred that Staso was acting under color of state law, the complaint fails to state a 42 U.S.C. § 1983 claim against her upon which relief can be granted.

### C. Officer Koza.

Although DiDonna lists Officer Koza as a defendant, he does not mention Officer Koza in the statement of his claim.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. Thus, respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. And so, a constitutional deprivation cannot be premised merely on the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008). Rather, "[b]ecause vicarious liability is inapplicable

to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, because DiDonna does not allege any facts regarding Officer Koza, he fails to allege that Officer Koza was personally involved in violating his rights. Thus, the complaint fails to state a 42 U.S.C § 1983 claim against Officer Koza upon which relief can be granted.

### D.  Pike County.

Although DiDonna lists Pike County as a defendant, he does not mention Pike County in the statement of his claim.

A municipality, such as Pike County, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id*.  Another way for a plaintiff to present a

claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798. Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*. In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of

18

training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at *5 (M.D. Pa. Mar. 31, 2022).  "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Here, DiDonna has alleged nothing regarding Pike County.  Thus, the complaint fails to state a claim against Pike County under either the policy-or-custom strand of municipal liability or the failure-to-train, supervise, or discipline strand of municipal liability.  In sum, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against Pike County.

## E.  Leave to Amend.

Before dismissing a complaint under the screening provisions of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  Here, as we noted in our screening order, it would be futile for DiDonna to amend as to claims against the Pennsylvania State Police and the Blooming Grove Barracks of the Pennsylvania State Police given that claims against those entities are barred by the Eleventh Amendment.  But

given the liberal standard for leave to amend, after screening the complaint, we gave DiDonna leave to file an amended complaint as to his claims against the other defendants.  Despite being granted an opportunity to file an amended complaint, DiDonna has not taken that opportunity.  Granting DiDonna further leave to amend would be futile.

## V.  Recommendation.

For the foregoing reasons, we recommend that (1) because the Eleventh Amendment bars the claims against the Pennsylvania State Police and the Pennsylvania State Police Blooming Grove Barracks, the court dismiss those claims for lack of subject-matter jurisdiction; (2) the court dismiss the remaining claims against the other defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted; and (3) the court close this case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The

briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of September 2024.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge